UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONYA WILLIAMS ROGERS, *et al.*, and on behalf of others similarly situated, | Case No. 1:23-cv-16387 |
| Plaintiff, | |
| vs. | Judge Jeremy C. Daniel |
| ALIGHT SOLUTIONS LLC, | Magistrate Judge Heather K. McShain |
| Defendant. | Noticed for Presentment: December 17, 2025 |

## PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Dated: December 4, 2025

**Pardell, Kruzyk & Giribaldo, PLLC**

*/s/ Logan A. Pardell*
Logan A. Pardell
Pardell, Kruzyk & Giribaldo, PLLC
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
T: (561) 726-8444
F: (877) 453-8003
lpardell@pkglegal.com

Jason T. Brown
Nicholas Conlon (*PHV*)
**Brown LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5279
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Bryan A. Giribaldo, Esq. * (PHV)
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
Telephone: (561) 726-8444
Facsimile (877) 453-8003
bgiribaldo@pkglegal.com

**Table of Contents**

I.     FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

II.    SUMMARY OF THE SETTLEMENT TERMS ...................................................... 4

   A.  Monetary Payments and Release of Claims.......................................................... 4

   B.  Settlement Administration and Distribution ........................................................ 6

III.   STANDARDS FOR FLSA COLLECTIVE ACTION SETTLEMENT APPROVAL ........ 6

IV.   THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT......................... 9

   A.  The Agreement is the product of contested litigation. ......................................... 9

   B.  The Agreement reflects a fair and reasonable resolution of a *bona fide* dispute between the Parties. .................................................................................................. 10

      1.  A *bona fide* dispute between the Parties existed over liability...................................... 10

      2.  The Agreement is fair and reasonable........................................................................ 12

V.    THE REQUESTED SERVICE PAYMENTS SHOULD BE APPROVED .......................... 17

VI.   THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED... 20

   A.  The Lodestar approach is appropriate................................................................. 20

   B.  The requested fee is reasonable when analyzed under the *Hensley* factors..................... 21

      1.  *Hensley* Factor One: Time and Labor Involved.......................................................... 22

      2.  *Hensley* Factor Two: Novelty and Difficulty of Question Presented............................. 23

      3.  *Hensley* Factor Three: Skill Required to Perform Legal Service ................................. 24

      Properly. ................................................................................................................... 24

      4.  *Hensley* Factor Four: Preclusion of Other Employment.............................................. 25

      5.  *Hensley* Factor Five: Customary Fee....................................................................... 26

      6.  *Hensley* Factor Six: Whether the Fee is Fixed or Contingent...................................... 29

      7.  *Hensley* Factor Seven: Time Limitations Imposed. ...................................................... 29

      8.  *Hensley* Factor Eight: Amount Involved and Results Obtained. ................................... 29

      9.  *Hensley* Factor Nine: Experience, Reputation and Ability of Attorneys. ..................... 29

      10.  *Hensley* Factor Ten: Undesirability of the Case........................................................ 30

      11.  *Hensley* Factor Eleven: Nature and Length of the Professional Relationship:......... 30

      12.  *Hensley* Factor Twelve: Awards in Similar Cases..................................................... 30

   C.  Plaintiffs' request for costs and expenses is also reasonable. ............................. 31

VII.   CONCLUSION.......................................................................................................... 32

**Cases**

*Bainter v. Akram Invs., LLC*, 2018 U.S. Dist. LEXIS 177445 (N.D. Ill. Oct. 9, 2018).... 13, 28, 30

*Barrentine v. Arkansas—Best Freight Sys., Inc.*, 450 U.S. 728 (1981)........................ 23

*Barrett v. Northshore University Healthsystem*, 1:17-cv-09088 (N.D. Ill.)................................. 27

*Benoskie v. Kerry Foods, Inc.*, 2020 U.S. Dist. LEXIS 177538 (E.D. Wis. Sep. 28, 2020)......... 18

*Binissia v. ABM Indus.*, 2017 U.S. Dist. LEXIS 153686 (N.D. Ill. Sep. 21, 2017).......... 13, 15, 20

*Blum v. Stenson*, 465 U.S. 896, 895 (1984) ....................................................................... 26

*Bozak v. FedEx Ground Package Sys., Inc.*, 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014) ................................................................................................................................ 8

*Brashier v. Quincy Prop. LLC*, 2019 U.S. Dist. LEXIS 200583 (C.D. Ill. Nov. 1, 2019) ........... 12

*Briggs v. PNC Financial Services Group, Inc.*, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016)......................................................................................................................... 8, 18, 19

*Butler v. Am. Cable & Tel., LLC*, 2011 U.S. Dist. LEXIS 115506 (N.D. Ill. Oct. 6, 2011)........... 9

*Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997)................................................... 32

*Castillo v. Noodles & Co.*, 2016 U.S. Dist. LEXIS 178977 (N.D. Ill. Dec. 23, 2016)....... 8, 14, 19

*Cazeau v. TPUSA, Inc.*, 2021 U.S. Dist. LEXIS 83588 (D. Utah Apr. 29, 2021)......................... 8

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ....................................................... 21

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ............................................................... 18

*Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310 (S.D.N.Y. 2021) ....... 15

*Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979) ............................................................... 9

*De La Riva v. Houlihan Smith & Co.*, 2013 U.S. Dist. LEXIS 136339 (N.D. Ill. Sep. 24, 2013)22, 31

*Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) ............................................................. 26

*English v Alsco, Inc.*, No. 1:16-cv-04910 (N.D. Ill.) ....................................................... 28

*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012)................................... 18

*Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723 (E.D.N.Y. 2009)................................. 31

*Ford v. Farha Roofing, LLC et al*, 2025 U.S. Dist. LEXIS 144450 (W.D. Mo. July 29, 2025) ... 27

*Furman v. At Home Stores LLC*, 2017 U.S. Dist. LEXIS 73816 (N.D. Ill. May 1, 2017)............. 8

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) ......................................... 7

*Hafley v. Amtel, LLC*, 2024 U.S. Dist. LEXIS 91578 (S.D. Ohio May 21, 2024)....................... 21

*Harrison v. Fort Dearborn Company*, 1:20-cv-02425 (N.D. Ill.)................................... 27

*Hill v. Harrington*, 2024 U.S. Dist. LEXIS 176272 (N.D. Ill. Sep. 28, 2024) ........................ 26

*Hoaglan v. Grede Holdings LLC*, 2022 U.S. Dist. LEXIS 122574 (E.D. Wis. July 12, 2022) .... 30

*Howard v. Web.com Grp. Inc.*, 2020 U.S. Dist. LEXIS 256933 (D. Ariz. Sep. 18, 2020)............ 15

*Howe v. Hoffman-Curtis Partners Ltd.*, 215 F. App'x 341 (5th Cir. 2007) ........................... 31

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)..................................................................... 17

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)................................ 21

*Kellar v. Summit Seating Inc.*, 664 F.3d 169 (7th Cir. 2011) ........................................... 12

*Knox v. The Jones Group*, 2017 U.S. Dist. LEXIS 146049 (S.D. Ind. Aug. 31, 2017) .......... 19, 31

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 U.S. Dist. LEXIS 126893 (N.D. Ill. Sept. 16, 2016) ................................................................................................................................ 8

*Lamon v. City of Shawnee, Kan.*, 754 F. Supp. 1518 (D. Kan. 1991) ........................................... 31

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).................................. 8, 9

*MatriMoore v. Midland Credit Mgmt.*, 2012 U.S. Dist. LEXIS 176600 (N.D. Ind. Dec. 12, 2012) ........................................................................................................................................... 27

*McCune v. Faneuil Inc.*, No. 4:23cv41, 2024 U.S. Dist. LEXIS 144184 (E.D. Va. Aug. 13, 2024) ........................................................................................................................................... 24

*Mitchell v. LVNV Funding, LLC*, 2020 U.S. Dist. LEXIS 64591 (N.D. Ind. Apr. 13, 2020)........ 27

*Moriarty v. Svec*, 233 F.3d 955 (7th Cir. 2000).......................................................................... 31

*Parker v. IAS Logistics DFW, LLC*, 1:20-cv-05103 (N.D. Ill.)..................................................... 28

*People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307 (7th Cir. 1996).................................. 22

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011) ........................................... 26

*Prena v. BMO Fin. Corp.*, 2015 U.S. Dist. LEXIS 65474 (N.D. Ill. May 15, 2015)..................... 8

*Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS 124017 (D. Ariz. July 24, 2019) ...... 15

*Sanchez v. Roka Akor Chi. LLC*, 2017 U.S. Dist. LEXIS 65478 (N.D. Ill. Apr. 20, 2017) .......... 28

*Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016) ...................... 15

*Slezak v. City of Palo Alto*, 2017 U.S. Dist. LEXIS 96900 (N.D. Cal. June 22, 2017) ............... 21

*Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702 (7th Cir. 2001) ............................ 21

*Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002)............................... 31

*Soto v. Wings R Us Romeoville, Inc.*, 2018 U.S. Dist. LEXIS 74361 (N.D. Ill. April 16, 2018) ........................................................................................................................................... passim

*Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544 (7th Cir. 1999)................................... 21, 22

*Taylor v. Progress Energy, Inc.*, 415 F.3d 264 (4th Cir. 2005)..................................................... 8

*Turner v. Concentrix Servs. US, Inc.*, 2023 U.S. Dist. LEXIS 5117 (W.D. Ark. Jan. 11, 2023)... 15

*United States v. United States Steel Corp.*, 2024 U.S. Dist. LEXIS 49170 (N.D. Ind. Mar. 19, 2024) .......................................................................................................................................... 26

*Vasquez v. Ranieri Cheese Corp.*, 2011 U.S. Dist. LEXIS 11503 (E.D.N.Y. February 4, 2011) .. 31

*Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 25, 2007)............ 18

*Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) ......... 15

*Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986) ......................................... 8

*White v. Beaver Cty.*, 2020 U.S. Dist. LEXIS 120478 (W.D. Pa. July 9, 2020) ........................ 23

*Wisneki v. Belmont Mgmt. Co.*, 2021 U.S. Dist. LEXIS 94854 (D. Kan. May 19, 2021)............ 25

*Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982)....................................................... 7

**Rules**

Fed. R. Civ. P 54(d)........................................................................................................................ 31

**Statutes**

28 U.S.C. § 1920 ....................................................................................................................... 31, 32

29 U.S.C. § 201 ................................................................................................................................ 1

29 U.S.C. § 216(b) ................................................................................................................. 7, 20, 31

Sonya Williams Rogers, Gerardo Caceres, Natashja Ross, Teresa Hernandez, Timeka Roberson, Carman Randall-Ferndandez, and Tamara Jeffers, on behalf of themselves and those individuals who have joined this action (collectively, "Plaintiffs"), move this Court for an order approving the Parties' Settlement Agreement ("Agreement") (attached hereto as Exhibit 1)[1], approving as reasonable the Agreement's proposed award of attorneys' fees and costs, and entering the proposed Approval Order, which is attached hereto as Exhibit 2. Under the Agreement, Defendant will pay a total of up to Nine Hundred Fifty Thousand Dollars ($950,000), including Four Hundred Fifty Thousand Dollars ($450,000) allocated to payments for the 1,010 Settlement Class Members, with the remainder allocated to separately negotiated Attorneys' Fees and Costs Fund. In support of this motion, Plaintiffs state as follows:

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 2023, Named Plaintiff Sonya Williams Rogers filed this Action on behalf of herself and others similarly situated against Defendant Alight Solutions LLC ("Alight"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq* and analogous state wage and hour laws. *See* ECF No. 1. Plaintiffs allege that Alight maintains a common policy or practice that requires hourly-paid call center employees, including Customer Care Representatives and employees in similar positions (collectively, "CCRs"), to perform uncompensated work before their scheduled shifts, including booting up their computers, logging into multiple systems and applications, and reviewing work-related emails. *Id.* Plaintiffs assert that these uncompensated activities result in unpaid overtime wages in violation of the FLSA and state wage-and-hour laws. *Id*. Alight denied and continues to deny these allegations, maintaining that CCRs have been properly compensated for all time worked, that its policies prohibit off-the-clock

---

[1]     All capitalized terms are defined in the Agreement, which is incorporated by reference into this memorandum of law. Plaintiffs refer the Court to the Agreement and its defined terms for consistency.

work, and that Plaintiffs cannot satisfy the requirements for certification under either the FLSA or Rule 23. Exhibit 3, Declaration of Logan A. Pardell ("Pardell Decl."), at ¶ 23.

Despite the disparate views on liability and the scope of the case, the Parties engaged in early settlement-related exchanges of documents and information in an effort to explore a potential settlement. *Id.* at ¶ 25. On February 20, 2024, Alight made an initial production of records "for settlement purposes only," consisting of pay and timekeeping data for the individuals who had opted in at the time of the production and exemplar policies. *Id.* at ¶ 26. After reviewing these records, Plaintiffs approached Alight regarding mediation; however, Alight was not interested in mediation at that time. *Id.* at ¶ 27. Instead, in an effort to preserve the Parties' respective attorneys' fees and costs, the Parties stipulated to stay discovery while Plaintiffs moved for conditional certification. *Id*. at ¶ 28; ECF No. 29.

Plaintiffs spent the next several weeks compiling declarations and drafting their motion for conditional certification, which they filed on April 10, 2024, and set for hearing on June 6, 2024. Pardell Decl., at ¶ 29; ECF No. 40.[2] Plaintiffs thereafter spent the subsequent weeks drafting the reply brief and preparing for the hearing on Plaintiffs' conditional certification motion. Pardell Decl., at ¶ 30; ECF No. 51. Undersigned counsel travelled from Boca Raton, Florida, to Chicago, Illinois, to attend the June 6, 2024, hearing. Pardell Decl., at ¶ 31; ECF No. 52. The Court took Plaintiffs' motion for conditional certification under advisement, *see generally id.*, and shortly thereafter, on July 2, 2024, granted the motion in part, authorizing notice to be sent to putative collective members who worked as CCRs during the relevant period. *See* ECF Nos. 54, 56.

---

[2] At the same time, Plaintiffs also filed a second amended complaint, which added Teresa Hernandez as a class representative and clarified the Rule 23 claims under Puerto Rico's wage and hour laws. ECF No. 39.

Pursuant to the Court's order, notice was issued, and, over the subsequent months, a total of 1276 individuals filed consent forms to join the Action. Pardell Decl. at ¶ 32. While the opt-in period was ongoing, the Parties agreed to participate in a private mediation with Hunter Hughes on February 14, 2025. *Id.*

To facilitate mediation, Alight supplemented its production by producing additional policies and related materials as well as two comprehensive data files, which covered the entire putative collective, including states of employment, job titles, timekeeping data, and pay-rate data. *Id.* at ¶ 34. Collectively, these productions, which included voluminous data and related analyses, provided Class Counsel with employee-level data, compensation details, and policy exemplars necessary to construct a comprehensive damages model and to evaluate the strengths and weaknesses of Plaintiffs' claims. *Id.* at ¶ 35. While the Parties attempted in good faith to negotiate a potential settlement at mediation, the mediation ended in an impasse. *Id.* at ¶ 36; ECF No. 62.

Following that impasse, the Parties began to engage in second-phase discovery. Pardell Decl. at ¶ 37. The Parties exchanged initial disclosures and spent nearly two months negotiating a comprehensive second-phase discovery plan, which permitted Alight to serve over 120 sets of written discovery and take over 40 depositions.[3] Pardell Decl. at ¶ 37; ECF No. 97. In addition, Plaintiffs served comprehensive sets of written discovery on Alight that covered merits-related discovery with respect to the "discovery opt-ins" as well as discovery related to collective and class-wide policies and procedures and pay data. Pardell Decl. at ¶ 37.

While this protracted discovery process was pending, the Parties revived settlement discussions in an effort to resolve this Action before both sides incurred substantially more

---

[3]     During this time period, on May 29, 2025, Plaintiffs filed the operative Third Amended Complaint, which amended the Second Amended Complaint to add Natashja Ross, Timeka Roberson, Carman Randall-Fernandez, and Tamara Jeffers as FLSA Collective Representatives, and included Rule 23 claims under the state laws of Pennsylvania, Maryland, and Virginia. See ECF No. 91.

attorneys' fees and costs that would likely quickly surpass the underlying value of the claims at issue. *Id.* at ¶ 38. The Parties reengaged Hunter Hughes to assist them in the negotiations. *Id.* Specifically, with Mr. Hughes' assistance, the Parties agreed to separately negotiate the Plaintiffs' Fund from the Attorneys' Fees and Costs Fund to ensure the fairness and impartiality of a potential settlement. *Id.* On August 19, 2025, the Parties reached a settlement in principle. *Id.* at ¶ 39. Thereafter, on August 21, 2025, the Parties executed a term sheet that defined the material terms of the settlement. *Id.* at ¶ 40. After executing the term sheet, the Parties negotiated a long-form settlement agreement and corresponding notice documents, which became fully executed on September 27, 2025. *Id.* at ¶ 41.

## II.     SUMMARY OF THE SETTLEMENT TERMS

### A.     Monetary Payments and Release of Claims

To settle this Action, Alight first agreed to pay $450,000.00, which is allocated to the "Plaintiffs' Fund," which covers: (i) Settlement Payments to Settlement Class Members; (ii) Service Payments of up to $23,500.00,[4] and (iii) Settlement Administrative Costs. Agreement at §§ 1.20, 1.22, 1.23, 1.25. In addition, the Parties separately negotiated an "Attorneys' Fees and Cost Fund" of up to $500,000.00 for Class Counsel's attorneys' fees and costs. *Id.* at § 1.3. Accordingly, the Total Settlement Amount that Alight has agreed to pay in this Agreement is up to $950,000.00. *Id.* at § 1.27.

---

[4]     This includes up to $5,000.00 each to Named Plaintiffs Sonya Williams Rogers and Gerardo Caceres, up to $2,500.00 each to Named Plaintiffs Teresa Hernandez, Natashja Ross, Timeka Roberson, Carman Randall-Fernandez, and Tamara Jeffers, and up to $1,000.00 to Meredith Gin. Pardell Decl. at § 83.

The Agreement defines "Settlement Class Members" to be FLSA Collective Members who worked at least four Compensable Workweeks[5] during the Liability Period.[6] *Id.* at § 1.26. Based on the data provided by Alight, while there are 1276 FLSA Collective Members, 266 of them do not qualify as Settlement Class Members because of one of the following reasons: (i) their claims are time-barred; (ii) they were not employed directly by Alight; or (iii) they worked fewer than 4 Compensable Workweeks during the Liability Period. Pardell Decl. at ¶ 46. Each Settlement Class Member will receive a pro rata portion of the Net Fund,[7] calculated by dividing the total number of Compensable Workweeks worked by each Settlement Class Member during the Liability Period, by the total number of Compensable Workweeks worked by all Settlement Class Members, multiplied by the Net Fund. Agreement at § 3.4(a). Each Settlement Class Member's payment will be issued by check, subject to required withholdings, with 50% allocated as wages (Form W-2) and 50% as non-wages (Form 1099). *Id.* at § 4.4.

In exchange for these monetary payments, Settlement Class Members will provide a limited release of claims. Specifically, Settlement Class Members will only release overtime claims that accrued during their employment as CCRs during the Liability Period, including, state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses (collectively, the "Released Claims"). *Id.* at § 5.1(a). To ensure the fairness of the settlement, "FLSA Collective Members who are not Settlement Class Members shall not release any claims. In addition, the claims asserted in the Litigation of such

---

[5]     A "Compensable Workweek" is defined as a week worked by an FLSA Collective Member as a CCR during the Liability Period in which the individual recorded at least 39 working hours. Agreement § 1.8.

[6]     The "Liability Period" is defined as the period beginning three years and sixty days prior to the date on which each individual filed a consent to join and continuing through August 21, 2025. *Id.* at § 1.15.

[7]     The "Net Fund" is defined as the Plaintiffs' Fund less Court-approved Service Payments, Settlement Administrative Costs, and applicable taxes. *Id.* at § 1.18.

FLSA Collective Members shall be tolled from the date the FLSA Collective Members filed their consent to join form through the date the Court approves the settlement." *Id.* at § 5.1(b).

### B.  Settlement Administration and Distribution

Following Court approval of the Agreement, Alight will provide the Settlement Administrator and Class Counsel with the Class List.[8] *Id.* at § 3.3 (a). Prior to mailing the Settlement Payments, the Settlement Administrator will verify the most recent mailing addresses of Settlement Class Members using the National Change of Address (NCOA) Database or a comparable database. *Id.* at § 3.3(b). The Settlement Administrator will then issue to each Settlement Class Member a Notice Packet, which includes the Notice (Agreement at Ex. B), and a check representing his or her Gross Individual Settlement Payment. Agreement §§ at 3.3(b), 4.3. Any checks returned as undeliverable with a forwarding address will be promptly re-mailed to the new address. *Id.* at § 3.3(b). If a check is returned as undeliverable without a forwarding address, the Settlement Administrator will perform skip-tracing searches, using databases such as Accurint, to locate an updated address and will re-mail the check if possible. *Id.* Settlement Class Members will have 120 days from the mailing date to negotiate their checks. *Id.* at § 4.8. Any amounts remaining from uncashed checks after the 120-day period will revert to Alight. *Id.*[9]

## III.  STANDARDS FOR FLSA COLLECTIVE ACTION SETTLEMENT APPROVAL

The Agreement constitutes an FLSA collective action settlement. This means that the Agreement only binds the Settlement Class Members who, by opting into this Action pursuant to 29 U.S.C. § 216(b), have already affirmatively provided their consent to be bound by the terms of

---

[8]     The Class List shall include, for each FLSA Collective Member, their names, employee identification numbers, last known addresses, last known telephone numbers, dates of employment as CCRs during the Liability Period, the number of workweeks each Settlement Class Member recorded at least 39 hours of work as CCRs during the Liability Period, and states of employment they worked as CCRs, as that information exists in their electronic employment records. *Id.* at § 1.5.

[9]     "If the Court does not approve reversion of the uncashed checks to Defendant, then any funds related to the uncashed checks shall be transferred to the relevant state unclaimed property fund." *Id.*

any settlement or judgment reached by the parties. *See* Agreement §§ 1.13, 1.26 (defining "FLSA Collective Members" and "Settlement Class Members," respectively); § 6.1 (authority and representation of FLSA Collective Members). Therefore, absent class members (i.e. individuals who are part of any alleged class who did not affirmatively opt into this Action) are not bound by the terms of this Agreement and do not release any claims. Moreover, because the Settlement Class only includes those FLSA Collective Members who worked at least four Compensable Weeks during the Liability Period, those FLSA Collective Members who are not Settlement Class Members do not release any claims and, in fact, their claims are tolled from the date they filed their consent to join form through the date the Court approves the settlement to ensure they suffer no prejudice. *Id*. at § 5.1(b).

Therefore, although the operative Complaint includes class action claims under Fed. R. Civ. P. 23, the Agreement does not settle such claims, and therefore the Agreement is not subject to the Court-approval requirements in Rule 23(e). Rather, the Agreement only binds Settlement Class Members who already filed written consents to join this action pursuant to 29 U.S.C. § 216(b), which necessarily requires a much different level of judicial scrutiny.

Put simply, "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The due process concerns present in Rule 23 class actions are not present in FLSA collective actions because putative FLSA collective members must affirmatively join the lawsuit by opting in, instead of opting out, in order to be bound by decisions of the Court. *See Woods v. New York Life Ins. Co*., 686 F.2d 578, 579-80 (7th Cir. 1982) (explaining the procedural differences between class and collective actions). Thus, unlike settlements under Rule 23, FLSA settlements are not necessarily subject to a two-stage process of preliminary approval followed by final approval, and no final

fairness hearing is required. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Cazeau v. TPUSA, Inc.*, 2021 U.S. Dist. LEXIS 83588, at *23 (D. Utah Apr. 29, 2021) ("Unlike Rule 23 class action settlements, fairness hearings are not required for approval of collective action settlements under the FLSA.").

While not as scrutinized as a settlement under Rule 23, to effectuate a release of the settlement of collective claims, the settlement agreement must be presented to the district court for review and determination of whether the settlement is fundamentally fair and reasonable. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) (holding that district court review is required for a settlement under the FLSA). However, instead of the two-step approval process required under Rule 23, courts apply a one-step approach to determine whether an FLSA settlement should be approved. *Briggs v. PNC Financial Services Group, Inc.*, 2016 U.S. Dist. LEXIS 165560, at *4 (N.D. Ill. Nov. 29, 2016); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 U.S. Dist. LEXIS 126893, at *3 (N.D. Ill. Sept. 16, 2016) ("'A one-step settlement approval process is appropriate []' in FLSA settlements.")).[10]

In this one-step approval process, the standard for court approval is straightforward: a court should approve a settlement if it was reached as a result of an arm's length resolution of contested litigation to resolve a *bona fide* dispute under the FLSA and if it is fair and equitable to all parties. *Lynn's Food Stores,* 679 F.2d at 1352-55; *Taylor v. Progress Energy, Inc.*, 415 F.3d 264, 371 (4th Cir. 2005); *Butler v. Am. Cable & Tel., LLC*, 2011 U.S. Dist. LEXIS 115506, at *30 n.9 (N.D. Ill.

---

[10]     *See also Soto v. Wings R Us Romeoville, Inc*., 2018 U.S. Dist. LEXIS 74361, at *5 (N.D. Ill. April 16, 2018) (implementing one-step approval process); *Furman v. At Home Stores LLC*, 2017 U.S. Dist. LEXIS 73816, at *4 (N.D. Ill. May 1, 2017) (implementing one-step approval process); *Castillo v. Noodles & Co*., 2016 U.S. Dist. LEXIS 178977, at *3 (N.D. Ill. Dec. 23, 2016) (implementing one-step approval process); *Prena v. BMO Fin. Corp*., 2015 U.S. Dist. LEXIS 65474, at *2 (N.D. Ill. May 15, 2015) (implementing one-step approach); *Bozak v. FedEx Ground Package Sys., Inc*., 2014 U.S. Dist. LEXIS 106042, at *6-9 (D. Conn. July 31, 2014) (resolving FLSA settlement with one step and explaining differences between collective actions under Section 216(b) of FLSA and Rule 23 class actions).

Oct. 6, 2011) ("Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provision").

Thus, first, the Court must be satisfied that the settlement was the product of "contested litigation." *Lynn's Food Stores*, 679 F.2d at 1353. Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated case that results in an arms'-length settlement as *indicia* of fairness. *Id*. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement to promote the policy of encouraging settlement of litigation. *Id. See also, Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979) ("It is a well settled principle that the law generally encourages settlements.").

## IV. THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT.

### A. The Agreement is the product of contested litigation.

The Agreement is the product of contested litigation and arm's-length negotiations between the Parties through experienced counsel. Plaintiffs allege that Alight maintained a common policy of failing to pay CCRs for all hours worked prior to the start of their scheduled shifts and, therefore, unlawfully denied them overtime pay. *See generally* ECF No. 91. However, Alight denied and continues to deny each of Plaintiffs' claims and contentions, including that CCRs actually worked off the clock and, if they did, that Alight knew or should have known about this off-the-clock work and it was done in contravention of Alight's widespread compliant timekeeping policies and procedures. Pardell Decl. at ¶ 63.

On April 10, 2024, Plaintiffs filed their motion for conditional certification. ECF No. 40. Alight's response in opposition disputed Plaintiffs' assertions and emphasized that this Action is not suitable for trial as a collective action. ECF No. 48. Despite Plaintiffs prevailing on their motion—*see* ECF Nos. 54-55—Alight maintains and continues to maintain that this Action is not

suitable for class or collective action treatment and that it would prevail on decertification following second-phase discovery. Pardell Decl. at ¶ 64.

Moreover, despite Plaintiffs' multiple attempts to engage in early mediation (including pre-litigation, prior to conditional certification, and after the opt-in period), this matter did not settle until nearly two years after it was originally filed. Pardell Decl. at ¶ 66. And, once the parties finally mediated, the mediation session itself was also contested. *Id*. at ¶ 67. Leading up to mediation, the Parties also undertook considerable legal analysis of the various issues implicated in this case, including the viability of Defendant's good-faith affirmative defense, Plaintiffs' claims of willfulness, and Defendant's eventual motion for decertification. *Id*. Indeed, throughout mediation, the Parties discussed the ultimate issues and relevant precedent that would impact the other's position. *Id*. at ¶ 68. However, despite this open dialogue, the mediation ended in an impasse. *Id*. at ¶ 69. It was only after the Parties began the process of engaging in second-phase discovery that the Parties' settlement discussions regained traction and they eventually reached a settlement. *Id*.

Accordingly, this Court should readily conclude that the Agreement was the product of contested litigation.

**B.     The Agreement reflects a fair and reasonable resolution of a *bona fide* dispute between the Parties.**

**1.     A *bona fide* dispute between the Parties existed over liability.**

As discussed *supra* § IV.A, the Agreement is the product of hotly contested litigation. Plaintiffs allege that Alight maintained a uniform policy or practice requiring CCR to perform uncompensated work before their scheduled shifts, including booting up computers, logging into applications, reading work-related emails, and completing post-call documentation. *Id*. at ¶ 61. Plaintiffs contend that these uncompensated activities result in unpaid overtime wages in violation

10

of the FLSA. *Id.* at ¶ 62. Plaintiffs also alleged that Alight's adherence requirements pressured CCRs to complete these tasks off the clock to maintain performance metrics. *Id.*

Alight vigorously denied these allegations from the outset and throughout the duration of the Action. *Id.* at ¶ 63. In opposing conditional certification, Alight argued that this case is fundamentally different from the "typical call center" case because most CCRs (other than those in Puerto Rico and California) do not clock in or out at the beginning and end of their shifts. ECF No. 48 at 2. Instead, CCRs report their own total hours worked for each day in Workday, and payroll pays them according to what they report. *Id.* at 2-3. Alight maintains that its policies and training require CCRs to record all time worked, including time spent logging into systems, reviewing emails, and performing project work, and that CCRs received training to that effect. *Id.* at 2-5. Alight contends that Plaintiffs' allegations reflected, at most, isolated misunderstandings or individual supervisors' directives, not a company-wide unlawful policy. *Id* at 12.

Alight further disputes that CCRs are similarly situated. It submitted sworn declarations from non-plaintiff CCRs stating that they were trained to and in fact did report time spent booting up computers, reading and responding to emails, and performing project work as compensable hours worked. *See Id.* at Exs. 2–10. These declarants explained that they were not disciplined for spending significant portions of their workdays on non-call-related work and that "schedule adherence" metrics did not require them to be on the phone for 90–92% of their shifts. *Id.* Alight also maintains that requiring pre-approval for overtime is a lawful policy, and that Plaintiffs' subjective beliefs about what could or could not be reported as work time could not establish a common unlawful policy. *Id.* at 13.

Alight also argues that, because most CCRs work remotely and report their own hours, it lacks actual or constructive knowledge of any alleged off-the-clock work, a required element of

an FLSA violation. *Id.* Alight emphasized that under the Seventh Circuit's decision in *Kellar v. Summit Seating Inc.*, 664 F.3d 169 (7th Cir. 2011), an employer is not required to pay for work it does not know about and had no reason to know about. *Id*.

The Parties' disputes thus extend to essentially each element of liability, including whether: (i) CCRs are subject to a uniform policy requiring off-the-clock work; (ii) Alight's policies and practices unlawfully deter CCRs from recording all time worked; (iii) adherence requirements effectively compelled off-the-clock work; (iv) if off-the-clock work was performed, the amount of such off-the-clock work (e.g. how long it takes a CCR to boot up their computer and load programs before becoming "call ready"); (v) Alight had actual or constructive knowledge of uncompensated work; (vi) whether Alight would prevail on its good faith affirmative defense; and (vii) Plaintiffs could show that Alight's purported violation of the FLSA was willful. Pardell Decl. at ¶ 65. Moreover, the Parties also dispute whether FLSA Collective Members and the members of the various purported Rule 23 classes are similarly situated for the purposes of collective or class treatment, respectively. *Id*. The Parties also dispute the availability of liquidated damages, penalties, and the extent of Defendant's monetary exposure. *Id*.

Given these sharply conflicting factual accounts and legal theories, the Court should find that the settlement resolves a *bona fide* dispute between the Parties.

## 2. The Agreement is fair and reasonable.

In determining whether an FLSA settlement is fair and reasonable, courts generally examine four factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) whether the value of immediate settlement outweigh the mere possibility of future relief after protracted litigation; and (4) whether the settlement is deemed fair and reasonable by the Parties. *Brashier v. Quincy Prop. LLC*, 2019 U.S. Dist. LEXIS 200583, at *4 (C.D. Ill. Nov. 1, 2019) (citing

*Soto*, 2018 U.S. Dist. LEXIS 74361, at *2; *Bainter v. Akram Invs., LLC*, 2018 U.S. Dist. LEXIS 177445, at *3 (N.D. Ill. Oct. 9, 2018) (same). Each of these factors is satisfied here.

### i. The Agreement was fairly and honestly negotiated.

The Agreement was the product of arm's-length negotiations among experienced counsel and provides meaningful recovery to Settlement Class Members. At the time of the Agreement, the Parties were very informed regarding their respective claims and defenses. Pardell Decl. at ¶¶ 57-60. To understand the merits of the parties' respective positions, Plaintiffs conducted extensive factual investigations regarding the issues raised in Plaintiffs' operative Complaint and Defendant's Answer. *Id*. at ¶ 24. Class Counsel interviewed multiple CCRs about their job duties and compensation practices to prepare the complaint(s) and gather declarations to eventually move for conditional certification. *Id*. at ¶ 29. Following the issuance of court-authorized notice, Class Counsel gathered pertinent factual information from a substantial number of the FLSA Collective Members to assist in preparing for mediation, second-phase discovery, and ultimately trial. *Id*. at ¶ 33. In advance of mediation, Alight produced a significant amount of pay and time data as well as multiple policies and procedures for Plaintiffs to analyze and develop a comprehensive exposure model and mediation statement. *Id*. at ¶¶ 34-35.

As such, because this settlement was reached after: (i) nearly two years of litigation during which the parties conducted extensive factual and legal investigations to assess their respective risks and costs of proceeding through trial; (ii) a full-day mediation session with an experienced wage and hour mediator, Hunter Hughes, that ended in an impasse; and (iii) several months of post-mediation negotiations assisted by Mr. Hughes, the Court should determine that the settlement was fairly and honestly negotiated. *See Binissia v. ABM Indus*., 2017 U.S. Dist. LEXIS 153686, at *20 (N.D. Ill. Sep. 21, 2017) ("the assistance of an experienced mediator in the settlement process

confirms that the settlement is non-collusive") (internal quotations omitted); *Castillo*, 2016 U.S. Dist. LEXIS 178977, at *2 (finding the settlement was reached following arm's-length negotiations after attending a mediation with Hunter Hughes).

### ii.    The ultimate outcome of the Action was unknown.

As detailed above, the Parties disputed virtually every element of liability. *See supra* § IV.B.1. If the litigation had continued, Plaintiffs would have faced obstacles and uncertainties, including a potential motion for decertification following the close of discovery, risk on class certification of the Rule 23 classes, summary judgment, and trial. Pardell Decl. at ¶ 70. Further, even if Plaintiffs prevailed on liability, they faced substantial risk in establishing damages. *Id*. at ¶ 71. Throughout the litigation, the Parties vigorously disagreed about the extent of the damages at issue, including how long the boot-up process actually took and whether Plaintiffs' claimed damages were *de minimus* and therefore not compensable. *Id*. Following the opt-in period, Class Counsel observed the login process for several FLSA Collective Members, and their log-in times varied substantially, and often only took between three and five minutes. *Id*. Accordingly, Plaintiffs faced a significant risk of establishing a consistent amount of damages throughout the FLSA Collective and Rule 23 classes, which would necessitate individual inquiries or a significant diminishment on the ultimate damages exposure. *Id*. at ¶ 72. These contested issues created substantial litigation risk, further supporting approval of the Agreement. *Id*.

### iii.    The Agreement provides a fair and reasonable recovery in light of the risks of continued litigation.

Under the Agreement, Alight will pay $450,000.00 through the Plaintiffs' Fund to be allocated among the 1,010 Settlement Class Members, which equates to more than **100%** of their unpaid overtime wages, assuming Settlement Class Members performed five minutes per day of off-the-clock work each and every shift they worked during the Liability Period. *Id*. at ¶ 73. Such

14

a recovery is an excellent result, and courts regularly approve settlements providing for far smaller percentage recoveries than that Plaintiffs have obtained here. *See Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.,* 538 F. Supp. 3d 310, 323 (S.D.N.Y. 2021) (collecting cases and approving a settlement amount around 13 percent of plaintiff's potential recovery); *Binissia*, 2017 U.S. Dist. LEXIS 153686, at *20 (finding that "13% or 27% of the maximum net recovery falls in the range of a reasonable settlement outcome for the class members"); *Viceral v. Mistras Group, Inc*., 2016 U.S. Dist. LEXIS 140759, at *20-24 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims, respectively, fair and reasonable in light of strength and variability of claims and risk on merits.); *Selk v. Pioneers Mem. Healthcare Dist*., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (approving settlement fund amounting to 26% to 50% of maximum recovery).

Moreover, the estimate of five minutes per day of off-the-clock hours is reasonable, particularly in light of Class Counsel's investigation observing the boot-up process taking approximately this much time and the discovery produced by Alight throughout the case. Pardell Decl. at ¶ 74. Further, this estimate is consistent with recoveries in other similar FLSA collective action settlements for call centers. See *Turner v. Concentrix Servs. US, Inc.*, 2023 U.S. Dist. LEXIS 5117, at *5 (W.D. Ark. Jan. 11, 2023) (approving settlement providing recovery of about 35 minutes of off-the-clock work per week); *Howard v. Web.com Grp. Inc.*, 2020 U.S. Dist. LEXIS 256933, at *15 (D. Ariz. Sep. 18, 2020) (approving settlement providing recovery of 15 to 20 minutes of unpaid start-up time per week); *Quintana v. HealthPlanOne LLC*, 2019 U.S. Dist. LEXIS 124017, at *9 (D. Ariz. July 24, 2019) (approving settlement providing recovery of about 5 minutes per day, or 25 minutes per week).

Under the formula set forth in the Agreement, the Settlement Class Members will receive

payments based on an equitable formula that takes into account each Settlement Class Member's number of weeks worked as a CCR during the Liability Period. Pardell Decl. at ¶ 75. The Liability Period is three years prior to the date the Settlement Class Member joined the Action, which means that the Agreement presumes Plaintiffs would prevail on proving Alight violations of the FLSA were willful, which is far from a certainty. *Id*. at ¶ 76. The equitable formula provides a net average payment of $403.57 per Settlement Class Member, after deducting anticipated Settlement Administrative Fees and Service Payments. *Id*. at ¶ 77.

Not only is the Agreement fair and reasonable by providing Settlement Class Members an excellent recovery, but the releases are sufficiently narrow to ensure further fairness. Specifically, Settlement Class Members only release claims related to their unpaid overtime allegations—nothing further. FLSA Collective Members who are not Settlement Class Members because they did not work more than four Compensable Workweeks during the Liability Period[11] do not release any claims whatsoever. Agreement at § 5.1(b). To even further ensure fairness, the claims of these FLSA Collective Members who are not Settlement Class Members will be tolled from the date they filed their consent to join form through the date the Court approves the settlement. *Id.*

In sum, the Agreement provides for significant relief to the Settlement Class Members, while providing narrow releases and the preservation of claims, warranting approval. Pardell Decl. at ¶ 81. Further, if the Agreement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. *Id*. at ¶ 82. Or, such recovery may not occur

---

[11]     Because the Agreement is limited to a settlement of the FLSA claims for unpaid overtime, the Parties limited the scope of the Settlement Class to only those who worked four Compensable Workweeks (*e.g.* a week in which an FLSA Collective Member could have plausibly worked overtime). Pardell Decl. at ¶ 78. The Parties agreed to a floor of four Compensable Weeks to avoid nominal settlement checks from being disseminated where the administrative cost of issuing them would likely exceed the actual value of the individual settlement payments, thereby diluting the recovery of the Settlement Class. *Id*. at ¶ 79. All actions the Parties took in these negotiations were to ensure fairness to the Settlement Class. *Id*. at ¶ 80.

at all. *Id*. For these reasons, settlement approval now is in the best interest of the Settlement Class Members.

### iv.    Named Plaintiffs and Class Counsel support the Agreement.

Class Counsel have comprehensive knowledge of the facts and legal issues relating to the claims and defenses in this Action and have ample evidence on which to base an informed assessment of the Agreement. *Id*. at ¶ 57; Exhibit 4, Declaration of Nicholas Conlon ("Conlon Decl.") at ¶ 2. Based on their knowledge of the case, the applicable law, and their extensive experience in litigating wage-and-hour collective and class actions, Class Counsel believe the Agreement is fair, reasonable, and in the best interests of the Settlement Class Members. Pardell Decl. at ¶ 58; Conlon Decl. at ¶ 3. Courts in this Circuit recognize that the opinion of experienced counsel strongly supports settlement approval. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate.").

In addition, all Named Plaintiffs have reviewed and approved the terms of the settlement and have executed the Agreement. Pardell Decl. at ¶ 59; Agreement § 6.1. Their approval further demonstrates that the Settlement is fair, reasonable, and should be approved.

## V.    THE REQUESTED SERVICE PAYMENTS SHOULD BE APPROVED

The Agreement contemplates Service Payments of up to a total of $23,500.00, including up to $5,000.00 each to Named Plaintiffs Sonya Williams Rogers and Gerardo Caceres, up to $2,500.00 each to Named Plaintiffs Teresa Hernandez, Natashja Ross, Timeka Roberson, Carman Randall-Fernandez, and Tamara Jeffers, and up to $1,000.00 to Named Plaintiff Meredith Gin, in recognition of their time, effort, and contributions to achieving a successful resolution. Agreement

at §§ 1.22, 1.23. These Service Payments are in addition to the Settlement Payments they would receive as their *pro rata* share of the Net Fund. *Id.*

Courts in this Circuit recognize that service awards to class representatives are appropriate to compensate them for the risks undertaken, time expended, and benefits they conferred on the class. *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012) (finding that because "a class action plaintiff assumes a risk" in bringing a class action suit, a service award is appropriate for compensating for that risk); *Benoskie v. Kerry Foods, Inc.*, 2020 U.S. Dist. LEXIS 177538, at *10 (E.D. Wis. Sep. 28, 2020) ("Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by the plaintiffs.") "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or coworkers.")

> In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation.

*Benoskie*, 2020 U.S. Dist. LEXIS 177538, at *10-11; *see also Briggs*, 2016 U.S. Dist. LEXIS 165560, at *6.

Here, each Named Plaintiff played a critical role in advancing the litigation to protect the interests of the FLSA Collective Members, which resulted in an excellent recovery for the

Settlement Class. Pardell Decl. at ¶ 84. Plaintiffs Sonya Williams Rogers and Gerardo Caceres, who initiated this case and were both Named Plaintiffs in the early iterations of the complaint (named plaintiffs for approximately two years), reviewed and approved pleadings, provided sworn declarations in support of conditional certification, and conferred extensively with Class Counsel throughout the litigation. *Id*. at ¶ 85. Plaintiffs Teresa Hernandez,[12] Natashja Ross, Timeka Roberson, Carman Randall-Fernandez, and Tamara Jeffers, who were added as Named Plaintiffs in the operative Complaint, likewise dedicated significant time to assisting with fact development and expanding the scope of the case to include additional state law claims. *Id*. at ¶ 86. Plaintiff Meredith Gin, added as a Named Plaintiff in the First Amended Complaint but was later replaced by Plaintiff Ross, provided a sworn declaration in support of conditional certification, assisted in fact development, and supported counsel's efforts to establish liability on a collective basis. *Id.* at ¶ 88.

The requested Service Payments, which in total represent less than 2.5% of the Total Settlement Amount, are consistent with service awards approved in other FLSA collective actions. *See Briggs,* 2016 U.S. Dist. LEXIS 165560, at *5-9 (approving $12,500 service award each to two plaintiffs in FLSA settlement); *Castillo*, 2016 U.S. Dist. LEXIS 178977, at *5-8 (approving $10,000 service award each for four named plaintiffs in FLSA wage action); *see also Soto*, 2018 U.S. Dist. LEXIS 74361, at *7-9 (in FLSA settlement, approving service award of $7,500 to the named plaintiff, $1,000 each to 8 opt-in plaintiffs who gave deposition testimony, and $500 to an Opt-in Plaintiff who gave a declaration but did not sit for a deposition); *Knox v. The Jones Group,* 2017 U.S. Dist. LEXIS 146049, at *10 (S.D. Ind. Aug. 31, 2017) (in FLSA settlement, approving

---

[12] Plaintiff Hernandez also provided a sworn declaration in support of conditional certification. *Id*. at ¶ 87.

service awards of $7,500 each to two Named Plaintiffs, $1,000 each to 22 opt-in plaintiffs who gave deposition testimony, and $250 each to eight opt-in plaintiffs who gave declarations).

Accordingly, the requested Service Payments are fair, reasonable, and should be approved by the Court.

## VI.  THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED.

The Agreement provides that Class Counsel may seek an award of up to $500,000.00 for attorneys' fees and reimbursement of reasonable litigation costs and expenses, subject to Court approval. Settlement Agreement §§ 1.3, 3.2. These amounts were negotiated separately from the Plaintiffs' Fund allocated to Settlement Class Members and do not reduce the Plaintiffs' Fund available for distribution. *Id.* § 2.4.

Considering the standard for utilizing the lodestar approach in other similar cases, and applying the factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983), as explained below, the attorneys' fees and costs Plaintiffs seek in this case are reasonable and warrant this Court's approval. This is particularly true, where here, the attorneys' fees sought are a 32.1% discount of Class Counsel's lodestar in this Action. Pardell Decl. at ¶ 101.

### A.    The Lodestar approach is appropriate.

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Accordingly, in FLSA collective actions, the Court may determine the reasonable attorneys' fee by using the lodestar approach. *Binissia*, 2017 U.S. Dist. LEXIS 153686, at *12 ("Courts typically utilize the lodestar method to determine the amount of reasonable fees to be awarded under a fee-shifting provision

20

like the FLSA's"); *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999) (utilizing lodestar method to determine fee award). This is particularly appropriate where, like the instant case, the Attorneys' Fees and Costs Fund was negotiated separately from the Plaintiffs' Fund. *Slezak v. City of Palo Alto*, 2017 U.S. Dist. LEXIS 96900, at *15-16 (N.D. Cal. June 22, 2017) ("However, where the recovery is separate from a common f[]und, the lodestar method is usually employed."); *see also Hafley v. Amtel, LLC,* 2024 U.S. Dist. LEXIS 91578, at *11-12 (S.D. Ohio May 21, 2024) (granting settlement approval of an FLSA collective action settlement and utilizing the lodestar approach for separately-negotiated attorneys' fees and costs).

"To determine fees under the FLSA, the district court will generally follow the 'lodestar' approach, multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). The lodestar calculation is presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

### B.    The requested fee is reasonable when analyzed under the *Hensley* factors.

In determining the reasonableness of a fee award, courts often apply the factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974), and subsequently set forth in *Hensley*. These twelve *Hensley* factors include: (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and the results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430. The Seventh Circuit utilizes the *Hensley* factors in fee-award determinations for claims

brought under the FLSA. *See Spegon,* 175 F.3d at 550 (adopting the *Hensley* framework); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310-11 (7th Cir. 1996) (same); *see also De La Riva v. Houlihan Smith & Co.*, 2013 U.S. Dist. LEXIS 136339, at *19 (N.D. Ill. Sep. 24, 2013) (same). Applying these factors here confirms the reasonableness of the requested fee.

### 1. *Hensley* Factor One: Time and Labor Involved.

This case required Class Counsel to expend significant time and labor to prosecute these claims, and the amount of fees sought is significantly less than Class Counsel's lodestar fee. Specifically, Class Counsel litigated the claims in this case for two years and, as of November 26, 2025, collectively invested over 1200 hours working on this case with no assurance of any recovery at all. Pardell Decl. at ¶¶ 97, 113; Conlon Decl. at ¶¶ 10, 13. Further, Class Counsel sought to engage Alight in settlement discussions early and often, including prior to the filing of the Action, in an effort to limit the amount of attorneys' fees and costs at issue. Pardell Decl. at ¶ 94.

During the course of this litigation, Class Counsel: (i) investigated the claims and drafted the Complaint and subsequent amendments, culminating in the Third Amended Complaint (ECF No. 91); (ii) communicated with FLSA Collective Members, conducted interviews, and collected supporting evidence and declarations; (iii) briefed and obtained conditional certification; (iv) coordinated with the Court-appointed Settlement Administrator, Apex Class Action LLC, which disseminated the Court-authorized Notice of Lawsuit and received returned consent forms; (v) examined Alight's collective lists for completeness, identified deficiencies, and worked with Apex and Alight's counsel to issue supplemental notices; (vi) prepared comprehensive discovery requests and served them on Alight; (vii) obtained and reviewed substantial payroll, timekeeping, and policy materials produced for settlement purposes, including U.S. and Puerto Rico datasets, pay-rate and job-title supplements, and exemplar policies; (viii) researched relevant legal issues and evaluated the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses; (ix)

constructed and refined a comprehensive damages model based on the available data and witness information; (x) prepared a detailed mediation submission; (xi) participated in a full-day mediation with Hunter Hughes on February 14, 2025; (xii) engaged in subsequent arm's-length settlement negotiations following the mediation; (xiii) negotiated and drafted the terms of the Agreement; and (xiv) prepared the motion for settlement approval and supporting papers now before the Court. *Id.* at ¶ 104.

In sum, as of November 26, 2025, Class Counsel's total lodestar in this Action is $668,266.00. *Id.* at ¶ 100. As such, the requested Attorneys' Fee award of $453,526.82 represents a 32.1% reduction of the Class Counsel's total lodestar. However, the attorneys' fee requested does not account for the additional time Class Counsel will necessarily expend after the filing of this motion. Pardell Decl. at ¶ 105. This additional work includes preparing for and attending a hearing on this motion (to the extent this Court deems a hearing appropriate), as well as fulfilling their obligations under the Agreement, including conferring with the Settlement Administrator, monitoring the administration of the settlement, and responding to inquiries from FLSA Collective Members. *Id.* Class Counsel estimates that this will require an additional 10 to 20 hours of attorney work. *Id.* at ¶ 106.

Therefore, because the total amount of attorneys' fees Class Counsel incurred significantly exceeds the attorneys' fees Plaintiffs seek, this factor supports approving the requested fee.

### 2. *Hensley* Factor Two: Novelty and Difficulty of Question Presented.

FLSA collective actions are both procedurally and substantively complex. *Barrentine v. Arkansas—Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law."); *White v. Beaver Cty.*, 2020 U.S. Dist. LEXIS 120478, at *17 (W.D. Pa. July 9, 2020) ("In the Court's experience, the FLSA and its attendant regulations and decisional law are among the more complex in the field of employment law, the

23

proof and arguments to be made quite nuanced, and its application very case-specific."). These complexities present evidentiary hurdles to establishing both liability and damages in a case such as this. Alight contends that certification cannot be maintained after second-phase discovery, in part, because FLSA Collective Members worked for different Team Leads and in different states, which had differing timekeeping mechanisms, policies, and procedures. *Id.* at ¶ 64. Accordingly, the volume of evidence that must be considered and the procedural difficulties involved in maintaining certification weigh in favor of approving the fee requested.

### 3. *Hensley* Factor Three: Skill Required to Perform Legal Service Properly.

FLSA collective actions, such as the one at issue here, inherently require skilled and experienced counsel to coordinate and manage effectively. *McCune v. Faneuil Inc*., No. 4:23cv41, 2024 U.S. Dist. LEXIS 144184, at *16 (E.D. Va. Aug. 13, 2024) ("collective actions inherently require considerable coordination and management").

Logan A. Pardell, one of the lead attorneys for Class Counsel, practices almost exclusively in plaintiff-side collective actions. Pardell Decl. at ¶¶ 5, 8-10. Class Counsel stays abreast of the changing law to ensure they maximize their clients' recovery in their cases pending across the United States. *Id*. at ¶ 11. This is because it is a unique niche area of law, the landscape of which changes regularly as a result of growing jurisprudence spanning the entire country. *Id*.

Jason T. Brown, founder and senior partner of Brown, LLC ("Brown"), and Nicholas Conlon, chair of the firm's Wage and Hour Department, bring extensive experience and skill to complex collective and class litigation. *See* Conlon Decl. at ¶¶ 4-6; at Exhibit A to Conlon Decl. Mr. Brown's background in high-stakes investigations and litigation, combined with a meticulous and trial-oriented approach, equips him to navigate the nuanced legal and procedural

challenges inherent in nationwide collective actions. *Id*. Mr. Conlon has led or co-led over 100 wage and hour collective and class actions in more than 30 federal jurisdictions, including some of the largest FLSA settlements in the country. *Id*.

Thus, given Class Counsel's experience and focus on litigating FLSA collective actions, they have the skill necessary to prosecute this Action. *Wisneki v. Belmont Mgmt. Co*., 2021 U.S. Dist. LEXIS 94854, at *8 (D. Kan. May 19, 2021) ("Plaintiffs' counsel demonstrates that they have the experience and skill to handle this FLSA case as the law firm's primary practice is in the FLSA field.") And, Class Counsel's skill and experience directly led to the favorable result here. Class Counsel had to coordinate gathering information and evidence from over 1000 FLSA Collective Members and prepare very complex and comprehensive damages models that only experienced counsel in this field would be able to do. Pardell Decl. at ¶¶ 91-92. Based on this comprehensive understanding of the relevant potential damages, as well as Class Counsel's intricate understanding of the law at issue, Class Counsel was able to negotiate this favorable settlement for the Settlement Class. *Id.* at ¶ 93. Therefore, this factor supports approving the fee requested.

### 4.   *Hensley* Factor Four: Preclusion of Other Employment.

Class Counsel litigated this case for more than two years. *Id*. at ¶ 66. During that time, the work performed by Class Counsel placed significant demands on Class Counsel's time and resources. *Id*. at ¶ 115. This is particularly true because Pardell, Kruzyk & Giribaldo, PLLC ("PKG") is only a three-attorney firm with no administrative staff. *Id*. For example, in anticipation of reviewing the tens of thousands of documents that were going to be produced in this case and dozens of depositions, Class Counsel did not pursue other potentially lucrative work. *Id. at* ¶ 116. As Class Counsel's ability to take on additional cases during the course of this litigation was limited, this factor weighs in favor of approval.

### 5. *Hensley* Factor Five: Customary Fee.

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). A reasonable hourly rate is "derived from the market rate for the services rendered." *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). For attorneys who bill using contingent fee agreements, where there is no actual billing rate, district courts consider "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (cleaned up). The Court may take judicial notice of the U.S. Department of Labor's Consumer Price Index ("CPI") Inflation Calculator in comparing the rates at issue here with those approved in past cases. *Id.* at 648-49; *see also Hill v. Harrington*, 2024 U.S. Dist. LEXIS 176272, at *11, n.8 (N.D. Ill. Sep. 28, 2024) ("Inflation is not, on its own, a reliable metric for adjusting attorneys' rates from previously decided cases, it still is relevant in deciding the appropriate rate increase, also taking into account market rates, and an attorney's experience.") (citing *Pickett*, 664 F.3d at 649).

Plaintiffs' lodestar calculation is based on Class Counsel's respective hourly rates for attorneys and support staff. PKG utilizes the Fitzpatrick Matrix, which is a chart prepared by the United States Attorney for the District of Columbia to guide what can be considered reasonable legal fees in complex matters. Pardell Decl. at ¶ 98. Courts within this Circuit have approved the use of the Fitzpatrick Matrix, or similar fee matrices, to determine a reasonable hourly ra*te. United States v. United States Steel Corp.*, 2024 U.S. Dist. LEXIS 49170, at *32-33 (N.D. Ind. Mar. 19, 2024) (finding that the rates proposed in the Fitzpatrick Matrix are "well within the hourly rate

equivalent of other awards this Court has approved").[13] Accordingly, Mr. Pardell currently bills at a rate of $723/hr, and Mr. Giribaldo and Mr. Kruzyk currently bill at a rate of $738/hr. Pardell Decl. at ¶ 99. However, because the Fitzpatrick Matrix changes based on year billed and years of experience, throughout the duration of the case, Mr. Pardell billed at $598/hr in 2023 and $655/hr in 2024, and Mr. Giribaldo and Mr. Kruzyk billed at $612 and $669/hr in those years, respectively. *Id*.[14]

With respect to Brown, their billing rates are as follows: $875/hr for Jason T. Brown (the firm's Head and Senior Partner), $685/hr for Nicholas Conlon (who was an Associate until early 2021 and has been a Partner since then), $535/hr for former Associate Edmund Celiesius, and $215/hr for legal assistants. Conlon Decl. at ¶ 10 These rates are consistent with those that have been approved for Brown and similarly experienced attorneys in this District, accounting for inflation and Mr. Conlon's promotion to partner. *See Harrison v. Fort Dearborn Company,* 1:20-cv-02425 (N.D. Ill.), Dkt. No. 42, ¶ 14, Dkt. No. 44 (approving FLSA collective action settlement that provided $23,591.00 in attorneys' fees out of $52,126.00 total settlement amount, where counsel's proposed lodestar calculation was based on rates of $700 for Mr. Brown and $425 for Mr. Conlon), attached as Exhibit 5; *Barrett v. Northshore University Healthsystem*, 1:17-cv-09088 (N.D. Ill.), Dkt. Nos. 76-2, 79 (granting motion for final approval of collective/class action settlement, where counsel had proposed hourly rates for purposes of lodestar cross check of $695

---

[13]     *Mitchell v. LVNV Funding, LLC*, 2020 U.S. Dist. LEXIS 64591, at *8 n.1 (N.D. Ind. Apr. 13, 2020) (noting that the USAO Attorneys' Fees Matrix which applies to the District of Columbia is "still a useful resource for determining whether attorneys' fees are reasonable outside of the District of Columbia, especially in similarly situated metropolitan areas, such as the Chicago metropolitan area where this Court is located"); *MatriMoore v. Midland Credit Mgmt.*, 2012 U.S. Dist. LEXIS 176600, at *11 (N.D. Ind. Dec. 12, 2012) (finding the comparable Laffey Matrix appropriate to consider when determining reasonable hourly rates).

[14]     While PKG has recently adopted the Fitzpatrick Matrix to set its hourly rates, their prior rates of $550/hr were approved as reasonable in a recent final approval of a class settlement. *Ford v. Farha Roofing, LLC et al*, 2025 U.S. Dist. LEXIS 144450 (W.D. Mo. July 29, 2025).

for Mr. Brown and $425 for Mr. Conlon), attached as Exhibit 6; *English v Alsco, Inc.*, No. 1:16-cv-04910 (N.D. Ill.), Dkt No. 103-6, ¶ 4, Dkt. No. 111 (granting motion for one-step approval of collective action settlement, where counsel had proposed hourly rates for purposes of lodestar cross check of $600 for Mr. Brown and $345 for Mr. Conlon where a fee expert, Douglas Werman, opined that the rates were "reasonable and well within the market range."), attached as Exhibit 7. Further, in *Parker v. IAS Logistics DFW, LLC*, the Court approved a $1,083,333.33 fee in a $3,250,000.00 collective and class action settlement, 1:20-cv-05103 (N.D. Ill.), Dkt. 179, which, as Brown, LLC noted in its approval motion, yielded a blended rate of $787.45 per hour. *See* Dkt. No. 176, Page 17 of 19, attached as Exhibit 8. The rates proposed and approved in these cases are consistent with the experience and qualifications of Mr. Brown, Mr. Conlon, and Brown, LLC's other attorneys and legal assistants, as described in the firm's resume. Conlon Decl. at Ex. A.

Not only are Class Counsel's rates reasonable and previously approved by other Courts, but they are consistent with those approved for other experienced FLSA attorneys in this District, particularly when adjusted for inflation. *See Bainter*, 2018 U.S. Dist. LEXIS 177445, at *12 (approving hourly rates of $700/hr for Douglas Werman, $550/hr for Maureen Salas almost a decade ago); *Soto*, 2018 U.S. Dist. LEXIS 74361, at *12-13 ($650/hr for Werman, $525/hr for Salas); *Sanchez v. Roka Akor Chi. LLC*, 2017 U.S. Dist. LEXIS 65478, at *15 (N.D. Ill. Apr. 20, 2017) (same). When adjusted for inflation, these approved rates are roughly equal to $875/hr for Mr. Werman and $685/hr for Ms. Salas pursuant to the Department of Labor's CPI calculator. Conlon Decl. at ¶ 12.

While Plaintiffs submit that Class Counsel's respective rates are reasonable, the requested attorneys' fee of $453,526.82 represents a 32.1% reduction of Class Counsel's total lodestar. Pardell Decl. at ¶ 101. Thus, when excluding lodestar attributable to support staff, an attorneys'

fee award of $453,526.82, represents a blended hourly rate of $438.71, which is well below the rates approved in this District for complex FLSA cases. Pardell Decl. at ¶ 102.

### 6. *Hensley* Factor Six: Whether the Fee is Fixed or Contingent.

Class Counsel took this case on a contingency-fee basis. Pardell Decl. at ¶ 113; Conlon Decl. at ¶ 13. Accordingly, Class Counsel undertook this litigation with the risk of obtaining nothing if no recovery was obtained for Plaintiffs or the FLSA Collective Members. *Id.* Moreover, Class Counsel's contingency arrangement required them to invest both time and expenses with no guarantee of recoupment. *Id.*. This factor favors approval.

### 7. *Hensley* Factor Seven: Time Limitations Imposed.

While there were no unusual time limitations imposed by this case, the nature of this complex litigation posed a significant time commitment, as discussed in more detail for *Hensley* Factors One and Four above.

### 8. *Hensley* Factor Eight: Amount Involved and Results Obtained.

Class Counsel obtained a favorable result for the Settlement Class Members, particularly in light of the risks involved and the limited scope of the release. *Id.* at ¶¶ 70-72, 93. Specifically, Class Counsel was able to recover more than 100% of Settlement Class Members' potential overtime wages. *Id.* at ¶ 73. Class Counsel was also able to obtain this result relatively early in the Action, before the commencement of protracted and lengthy second-phase discovery. *Id*. at ¶ 69. This is also a positive result when considering the inherent risks to continued litigation and the very real possibility that Plaintiffs might not have prevailed on every contested issue in this action. *Id*. at ¶¶ 69-72.

### 9. *Hensley* Factor Nine: Experience, Reputation and Ability of Attorneys.

Class Counsel has significant experience in litigating collective action cases across the country and has an impeccable reputation for success in this area of law. Class Counsel

29

collectively have decades of legal experience and have served as class counsel in several collective actions. *Id*. at ¶¶ 8-21; Conlon Decl. at Exhibit A. Class Counsel has recovered many millions of dollars on behalf of FLSA collective action members across the country. *Id.* Further, Mr. Brown, a former FBI Legal Advisor and Special Agent, has nearly three decades of litigation experience and has been involved in cases yielding recoveries exceeding a billion dollars. Conlon Decl. at ¶ 5. This factor weighs in favor of approval.

### 10.    *Hensley* Factor Ten: Undesirability of the Case.

Class Counsel did not find this case undesirable to prosecute. However, many attorneys are reluctant to take on cases such as this, where there is a very real risk of no recovery and the time commitment is significant.

### 11.    *Hensley* Factor Eleven: Nature and Length of the Professional Relationship:

As stated above, Named Plaintiffs engaged Class Counsel's services well over two years ago to represent them in this FLSA collective action.

### 12.    *Hensley* Factor Twelve: Awards in Similar Cases.

The attorneys' fees requested here are comparable to those recovered in similar cases. Courts in this Circuit regularly approve attorneys' fees in FLSA settlements under the lodestar method that results in fee payments that exceed the employees' recovery. *See e.g. Hoaglan v. Grede Holdings LLC*, 2022 U.S. Dist. LEXIS 122574 (E.D. Wis. July 12, 2022) (one-step approval of collective action settlement totaling $64,307.33, of which $41,500.00 was allocated to attorneys' fees and costs); *Bainter*, 2018 U.S. Dist. LEXIS 177445 (one-step approval of collective action settlement totaling $210,000.00, of which $130,000.00 was allocated to attorneys' fees and $1,733.76 was allocated to costs); *Soto*, 2018 U.S. Dist. LEXIS 74361 (one-step approval of collective action settlement totaling $450,000.00, of which $355,216.10 was

allocated to attorneys' fees and $9,198.42 was allocated to costs); *Knox*, 2017 U.S. Dist. LEXIS 146049 (one-step approval of collective action settlement totaling $1,300,000.00, of which $675,000.00 was allocated to attorneys' fees and $29,803.36 was allocated to costs); *De La Riva*, 2013 U.S. Dist. LEXIS 136339, at *1-3 (awarding $137,141 in attorneys' fees and costs, based on consent decree requiring Defendants to pay two Plaintiffs a combined $23,333.42 in FLSA damages).

This is because, in FLSA cases, "courts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery." *Vasquez v. Ranieri Cheese Corp*., 2011 U.S. Dist. LEXIS 11503, at *10-11 (E.D.N.Y. February 4, 2011) (quoting *Estrella v. P.R. Painting Corp*., 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009)); *Howe v. Hoffman-Curtis Partners Ltd*., 215 F. App'x 341, 342 (5th Cir. 2007) ("Given the nature of claims under the FLSA, it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples"); *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) (the Seventh Circuit has "not formulated any mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered.").

Accordingly, while here the Attorneys' Fees and Cost Fund slightly exceeds the Plaintiffs' Fund, this is not uncommon in FLSA collective actions and is consistent with awards in similar cases. As such, this factor supports approval of Class Counsel's attorneys' fees.

### C. Plaintiffs' request for costs and expenses is also reasonable.

An award of reasonable attorneys' costs and expenses is also mandatory under the FLSA. *See* 29 U.S.C. § 216(b). This includes "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed. R. Civ. P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan.*, 754 F. Supp. 1518, 1524 (D. Kan. 1991) (noting expenses generally include "all reasonable out-

of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd*

in part on other grounds by 972 F.2d 1145; *see also Calderon v. Witvoet,* 112 F.3d 275, 276 (7th

Cir. 1997) (observing that expenses such as travel are not "costs" under 29 U.S.C. § 1920, but

"are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and

meal expenses are the sort of things that a lawyer includes with a bill for professional services.").

Class Counsel requests reimbursement for a total of $46,743.18 in expenses. Pardell Decl.

at ¶¶ 107-109; Conlon Decl. at ¶ 14 These expenses were reasonably and necessarily incurred in

the prosecution of the case. *Id.* These expenses include filing fees, pro hac vice fees, travel

expenses, notice administration, legal research, and the mediation fee. *Id.* Consistent with the

Parties' Agreement, Class Counsel requests that the Court approve reimbursement of these

litigation costs.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs request this Court: (i) approve the Parties'

Settlement Agreement as fair and reasonable and enter the proposed Approval Order, which is

attached hereto as Exhibit 2; and (ii) enter any other relief this Court deems appropriate.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 4, 2025, I filed the foregoing document with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to the attorney(s) of record:

Noah A. Finkel
Christina Jaremus
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
(312) 460-5000
nfinkel@seyfarth.com
cjaremus@seyfarth.com

*Counsel for Defendant*

*/s/ Logan A. Pardell*
Logan Pardell